NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KHALIF COOPER,<br><br>    *Plaintiff*,<br><br>v.<br><br>CITY OF PATERSON; OFFICER JERRY MORAVEK; POLICE CHIEF IBRAHIM BAYCORA; POLICE DIRECTOR JERRY SPEZIALE; JANE/JOHN DOES 1-10, fictitious persons; ABC CO., fictitious persons,<br><br>    *Defendants*. | Civil Action No. 23-03566<br><br>**OPINION** |

**SEMPER**, District Judge.

The current matter comes before the Court on a motion to dismiss filed by the City of Paterson ("Paterson") and Defendant Ibrahim Baycora and Defendant Jerry Speziale (the "Officer Defendants").[1] (ECF 9.) Plaintiff Khalif Cooper ("Plaintiff") opposed the motion. (ECF 14.) The Defendants filed a brief in reply.[2] (ECF 17.) The Court reviewed all the submissions in support and in opposition and held oral argument with the parties on March 26, 2024.  For the reasons stated below, the Defendants' motion is **GRANTED.**

---

[1] Plaintiff also sued Defendant Police Officer Jerry Moravek ("Moravek") in his personal and professional capacity. Moravek, in part, joined in Officer Defendants' motion to dismiss. (ECF 31.)

[2] Defendants' brief in support of their motion to dismiss (ECF 9-2) will be referred to as "Defs. MTD."  Plaintiff's brief in opposition to the Individual Defendants' motion (ECF 14) will be referred to as "Plf. Br." and the Defendants' reply brief (ECF 17) will be referred to as "Defs. Rep."

I.       **FACTUAL AND PROCEDURAL BACKGROUND**[3]

When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). Plaintiff brings this action in his individual capacity and at all relevant times, was a resident of the State of Pennsylvania. (ECF 1, Compl. ¶ 7.) Defendants Ibrahim Baycora ("Baycora") and Jerry Speziale ("Speziale") were employed by Defendant City of Paterson ("Paterson")[4] as the Police Chief and Police Director, respectively, during the relevant timeframe. (*Id.* ¶¶ 8-11.) Plaintiff sues the Officer Defendants in both their individual and official capacities. (*Id.*)

On or about June 11, 2022, Plaintiff alleges that Moravek and other members of the Paterson Police Department ("PPD") were responding to a noise complaint on Garrison Street in Paterson. (*Id.* ¶ 15.) Upon hearing gunshots, Moravek ran toward the sound of the gunshots on to Marion Street. (*Id.* ¶ 16.) At this time, Plaintiff contends he was running away from the gunshots and crossed the path of Moravek, at which time, Moravek started pursuing Plaintiff. (ECF 1, Compl. ¶ 17.) During the pursuit, Moravek yelled at the Plaintiff to "drop the gun" and shortly thereafter, fired two shots at Plaintiff, striking him once in his back, causing Plaintiff to fall to the ground. (*Id.* ¶ 18.) Moravek did not find a weapon on Plaintiff or within Plaintiff's reach. (*Id.* ¶ 22.) As a result of the shooting, Plaintiff sustained damage to his spinal cord, leaving him unable to walk. (*Id.* ¶ 23.) On February 6, 2023, the State brought criminal charges against Moravek alleging second-degree aggravated assault causing serious bodily injury in violation of N.J.S.A. 2C:12-1B(1) and second degree official misconduct in violation of N.J.S.A. 2C:30-2A. (*Id.* ¶ 25.)

---

[3] The facts are taken from the Complaint ("Compl.") (ECF 1) for purposes of the current motion.
[4] Defendants Baycora, Speziale, and Paterson will be referred to collectively as the "Moving Defendants" for purposes of this motion to dismiss.

Following an investigation of the incident by the New Jersey Attorney General Public Integrity and Accountability office, on or around March 27, 2023, the New Jersey Attorney General assumed control over the Paterson Police Department. (*Id.* ¶¶ 24, 27.)

On July 2, 2023, Plaintiff filed suit in this Court alleging that Defendants and others violated his constitutional rights, seeking redress for the deprivation of Plaintiff's civil liberties and compensatory and punitive damages in the amount of $50,000,000.00 to redress the alleged deprivation of Plaintiff's rights secured by the Constitution of the United States and State of New Jersey. (*See generally* ECF 1, Compl.) Defendants Baycora, Speziale, and City of Paterson filed the instant motion on September 8, 2023, and all briefing was timely filed. (ECF 9-2.)

## II.   <u>MOTION TO DISMISS STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted."  For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

 In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  Restatements

of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### III.   LEGAL ANALYSIS

As a starting point, Counts I, II, III, IV and VII do not assert allegations against the Moving Defendants and are therefore not discussed herein. (*See generally* ECF 1, Compl.) Instead, Plaintiff alleges causes of action against the Moving Defendants in Counts V, VI, and VIII. (*Id.*) Specifically, Counts V and VI assert violations pursuant to 42 U.S.C. § 1983 ("Section 1983") and N.J.S.A 10:6-2 of the New Jersey Civil Rights Act ("CRA"). Count VIII asserts state law negligence claims.

A municipality or municipal agency may be held liable under Section 1983 only if its official policy or custom causes a constitutional injury. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 658 (1978)) ("When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom.").

The NJCRA was modeled after Section 1983, and, thus, courts in New Jersey have consistently looked at claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443-44 (D.N.J. June 29, 2011); *Chapman v. New Jersey*, No. 08–4130, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the

NJCRA in terms nearly identical to its federal counterpart[.]"); *Armstrong v. Sherman,* No. 09–716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983[.]").

Finally, under New Jersey law, to succeed on a negligence claim, a plaintiff must establish: "(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages." *Bullock v. Ancora Psychiatric Hosp.*, No. 10-1412, 2011 U.S. Dist. LEXIS 92307, at *35-36 (D.N.J. Aug. 18, 2011) (alterations in original) (citing *Polzo v. Cnty. of Essex*, 960 A.2d 375, 384 (N.J. 2008)).

### 1.  **Qualified Immunity**

As a threshold matter, Moving Defendants argue that Moravek is entitled to qualified immunity insofar as his conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." (*See* ECF 9, Def. MTD. at 10.) However, Plaintiff argues Moravek is not entitled to qualified immunity because the moving Defendants have not met their burden establishing he is entitled to it. (*See* ECF 14, Pl. Br.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Montanez v. Thompson*, 603 F.3d 243, 249-50 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. This doctrine provides a government official immunity from suit rather than a mere defense from

liability. *Id.* Qualified immunity will not, however, act as a shield for "the official who knows or should know he is acting outside the law." *Butz v. Economou*, 438 U.S. 478, 506-07 (1978).

The Third Circuit has stated that "qualified immunity is an objective question to be decided by the court as a matter of law. *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004). "The jury, however, determines disputed historical facts material to the qualified immunity question." *Johnson v. Anhorn,* 416 F. Supp. 2d 338, 361 (E.D. Pa. Jan. 31, 2006) (quoting *Carswell,* 381 F.3d at 242); *Iwanejko v. Cohen & Grigsby, P. C.*, No. 03-01855, 2006 WL 2659109, at *9 (W.D. Pa. Sept. 15, 2006).

The Moving Defendants urge the Court to engage in the two-prong qualified immunity test outlined in *Pearson*. However, at this juncture, the Court declines to do so as there are still material facts in dispute which a jury must decide.

### 2. *Monell* Liability (Count V)

Turning to the claims alleging municipal liability, in *Monell* the Supreme Court established that municipalities and other government entities were "persons" subject to liability under 42 U.S.C. § 1983 for constitutional rights violations, but that they were not liable under the doctrine of *respondeat superior* for the misconduct of their employees. *Monell*, 436 U.S. at 690-92; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 810 (1985). To prevail on a *Monell* claim, a plaintiff must first establish that the municipality had a policy or custom that deprived him of his constitutional rights. *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) (quoting *Beck* 89 F.3d at 971). In other words, the plaintiff must show that the municipality, through one of its policymakers, affirmatively proclaimed the policy or acquiesced in the widespread custom that caused the violation. *Watson v. Abington Twp.*, 478 F.3d 144, 155-56 (3d Cir. 2007).

Additionally, "in the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (citation omitted). However, a failure to train claim can only serve as the basis for a Section 1983 liability when "the failure to train amounts to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *Id.* (citation omitted). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* (citation omitted).

A plaintiff sufficiently pleads deliberate indifference by showing that "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne Cnty*, 660 F.3d 169, 180 (3d Cir. 2011) (internal quotation marks omitted) (quoting *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)).

In view of this case law, Plaintiff has not pled a municipal policy. However, he has sufficiently pled a custom of similar unlawful conduct, which Paterson failed to take precautions against future violations, and at least in part, led to his injury. Plaintiff has not, however, adequately pled that Paterson failed to train its police officers.

### a. Policy or Custom

A policy or custom can be established when: (1) "a decision maker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict"; or (2) a course of conduct is "so permanent and well settled as to virtually constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *see also Watson*, 478 F.3d

at 155-56; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (defining "custom" as "'an act that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997))). Although a policy or custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss. A plaintiff must also allege that the policy or custom was the "proximate cause" of his injuries. *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019); *see also Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996). He may do so by demonstrating an "affirmative link" between the policy or custom and the constitutional violation he alleges. *Bielevicz*, 915 F.2d at 850 (internal quotation marks omitted).

Here, Plaintiff has not adequately alleged a municipal policy as his complaint fails to refer to "an official proclamation, policy, or [an] edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). However, Plaintiff's allegations with respect to a municipal custom satisfy *Roman*. Specifically, Plaintiff alleges Paterson "failed to ensure . . . that its police officers would obey, follow and otherwise abide by appropriate protocol and procedures regarding the excessive use of force." (ECF 1, Compl. ¶ 53.) Indeed, Plaintiff alleges Paterson had actual or constructive notice of the "failures of its police personnel . . . based on prior incidents" of similar instances of conduct. (*Id.* ¶ 54.) Plaintiff contends these prior incidents include but are not limited to:

- A 2012 incident in which officers shot and killed an individual resulting in a wrongful death complaint. (*Id.*)

- The assault of two separate individuals by the same Paterson Police officer in 2018 and 2021 encounters. (*Id.*)

- A 2019 encounter resulting in the individual's death from the alleged unreasonable use of force while in Paterson Police custody. (*Id.*)

The Complaint contends that "several months" before the shooting of Plaintiff occurred, in February of 2022, the Police Executive Research Forum ("PERF") released their findings assessing the PPD's use of force. Plaintiff alleges that PERF identified a "high rate of force being used" and a "deficiency of PPD supervisors in 'conducting comprehensive reviews of use of force reports and incidents.'" (*Id*. ¶ 56.) Further, Plaintiff alleges that as a result of the numerous incidents of alleged unreasonable use of force, including the shooting of Plaintiff, the New Jersey Attorney General assumed control over the PPD on March 27, 2023. (*See* Compl.) While the State's Attorney General did not assume control over the PPD until after the shooting of Plaintiff, like the Court in *Roman*, we may fairly infer that the problems that led to its assumption of control were occurring before, during, and after the allegations within Plaintiff's Complaint. *Roman*, 914 F.3d at 799.

The New Jersey Attorney General's assumption of control over the PPD serves to fortify Plaintiff's allegations of unlawful custom because this action acknowledges a widespread course of conduct within the PPD. When viewed in conjunction with the prior similar incidents and the PERF findings, it is logical to infer that Paterson's continued tolerance of repeated misconduct facilitated similar unlawful actions in the future including the claims alleged by Plaintiff. It follows that Plaintiff has adequately pled municipal custom and proximate causation under Section 1983.

### b.  Failure to Train

A *Monell* claim may also be premised on a municipality's failure to train, supervise, and discipline.  To plead such a failure-to claim, a plaintiff must demonstrate that a city's failure "reflects a deliberate or conscious choice." *Roman*, 914 F.3d at 798-800 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). Establishing a failure to train claim under Section 1983 is difficult and applies in narrow situations. *Reitz,* 125 F.3d at 145; *City of Canton,*

*Ohio v. Harris*, 489 U.S. 378, 387 (1989) (concluding there are "limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983"). "A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz*, 125 F.3d at 145 (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991)). A "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bryan*, 520 U.S. at 404. It is not enough for a Section 1983 Plaintiff to merely identify conduct "properly attributable to the municipality." *Id.* Rather, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

Here, Plaintiff's allegations regarding Paterson's failure to train and supervise are not strong enough to survive a motion to dismiss. (*See* Compl. at 14-15.) The Complaint does not allege any facts specifically identifying deficits with respect to training or supervision of its police officers as it pertains to use of force. It cannot be inferred that the absence of training reflects a "deliberate indifference" or a direct "causal link" between municipal action and the alleged deprivation of Plaintiff's federal rights.  As such, this Court concludes that Plaintiff has not properly pled claims for failure to supervise and train pursuant to *Monell*. Plaintiff will be granted leave to amend his Complaint to address these deficiencies.  Accordingly, Defendants' motion to dismiss Count V is granted without prejudice.

3.  **Supervisory Liability (Count VI)**

To state a claim against a defendant in his individual capacity under Section 1983, a plaintiff must establish that the defendant had personal involvement in committing the alleged violations. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981)); *see also Agresta v. City of Phila.*, 801 F. Supp. 1464, 1468 (E.D. Pa. Aug. 11, 1992). Further, because there can be no vicarious liability claims under Section 1983, the mere fact that a named defendant is in a supervisory position is insufficient to establish liability. *Andrews*, 895 F.2d at 1478 (*citing Rizzo v. Goode*, 423 U.S. 362, 377 (1976)); *see also Reaves v. Vaugh*, No. 00-2786, 2001 U.S. Dist. LEXIS 12186, at *4 (E.D. Pa. Aug. 10, 2001).

a.  **Official Capacity**

Plaintiff concedes that his claims against Defendant Baycora (Chief of Police) and Defendant Speziale (Police Director) in their official capacities should be dismissed as duplicative of his claims against the City of Paterson. (ECF 14, Pl. Br. at 5.) Indeed, "a lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them." *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006). *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell* 436 U.S. at 690.) "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 165-66. Plaintiff's claims against Defendant Baycora and Defendant Speziale under Count VI in their official capacity are dismissed with prejudice.

b.  **Individual Capacity**

Moving Defendants also contend that Plaintiff's supervisory liability claim against Baycora and Speziale must be dismissed because Plaintiff fails to plead that Baycora and Speziale

were personally involved in the alleged wrongdoing.  (ECF 9, Def. MTD. at 17-18.)  This Court agrees with Moving Defendants. To state a claim against a defendant in his individual capacity under Section 1983, a plaintiff must establish that the defendant had personal involvement in committing the alleged violations. *See Iqbal*, 556 U.S. at 676. *See also Rode*, 845 F.2d at 1207 (citing *Parratt*, 451 U.S. at 537); *Agresta*, 801 F. Supp. at 1468 (explaining that the liability of an individual officer must "be based on his own acts or omissions, not those of [other] individual officers."). In *Rizzo,* the United States Supreme Court conditioned the liability of a supervisory official for constitutional violations perpetrated by subordinate police officers upon the official's direct and active involvement in the violations. 423 U.S. at 376. A plaintiff must plead that each government official defendant, through the individual's own actions, has violated the constitution. *Bob v. Kuo*, 387 F.App'x 134, 135 (3d Cir. 2010).

Plaintiff states Baycora and Speziale are "liable based upon their own personal conduct…and acquiesced…or were deliberately indifferent to the consequences…which directly caused the violation." (EFC 1, Compl. at 19.)  Other than these conclusory recitations, Plaintiff fails to plead any personal involvement by Baycora or Speziale. While a Plaintiff can show personal involvement through allegations of personal direction or actual knowledge and acquiescence these allegations must be made with particularity. *Davenport v. City of Phila.*, No. 16-6397, 2018 U.S. Dist. LEXIS 183746, at *8 (E.D. Pa. Oct. 26, 2018) (citing *Rode*, 845 F.2d at 1207). Plaintiff asserts no facts demonstrating that Baycora or Speziale were involved in the events on June 11, 2022. Plaintiff's Complaint is insufficient to state individual capacity liability claims against Baycora or Speziale under Section 1983.

### i.  NJCRA Claims

Defendants contend the above "analysis" with respect to the supervisory liability claims against Baycora and Speziale applies with "equal force" to claims arising under the NJCRA and Plaintiff's NJCRA claims should be dismissed for the same reasons as his Section1983 claims. (*See* ECF 9, Def. MTD. at 18-19.) The NJCRA was modeled after Section 1983, and thus courts in New Jersey have generally looked at claims under the NJCRA "through the lens of § 1983." *Ingram v. Twp. Of Deptford*, 911 F.2d 280, 298 (D.N.J. Aug. 14, 2012); *Trafton*, 799 F.Supp.2d at 443-44; *see also Armstrong*, 2010 WL 2483911, at 5. While this does not necessitate the dismissal of NJCRA claims that are analogous to Section 1983 claims, it does necessitate the same analysis to be performed.

Here, Plaintiff's NJCRA claim is identical to its Section 1983 counterpart. Additionally, Defendants offer no additional arguments—outside their arguments for the dismissal of the analogous Section 1983 claims—for why the NJCRA claims should be dismissed. In the interest of judicial economy, the Court refers to its above analysis of Plaintiff's Section 1983 claims asserting liability against Baycora and Speziale in their individual capacity and will rule on the analogous NJCRA claim accordingly. *Prunkel v. Cnty. of Bergen,* No. 17-5154*,* 2018 WL 4043291, at *5 (D.N.J. Aug. 23, 2018) (analyzing NJCRA qualified immunity challenges, failure to intervene claims, and excessive force claims consistently with § 1983).

Accordingly, Defendants' motion to dismiss is granted as to Count VI with prejudice as Plaintiff's Complaint is insufficient to state individual capacity liability claims against Baycora or Speziale under Section 1983 and the NJCRA.

4. **State Law Tort Claims (Count VIII)**

In Count VIII, Plaintiff contends that Moving Defendants were negligent, and as a result, proximately caused Plaintiff's damages. Under New Jersey law, in order to sustain a common law

cause of action in negligence, a plaintiff must show four core elements: "(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages." *Weinberg v. Dinger*, 524 A.2d 366, 373 (N.J. 1987) (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts,* § 30 at 164–65 (5th ed. 1984)).

Plaintiff broadly alleges that "Defendants breached [their] duties in the failure to execute or enforce . . . the Paterson Police Department's Standard Operating Procedure for Use of Force . . . and the failure to properly supervise the Defendants and/or intervene to prevent or limit the wrongful or negligent acts of other Defendants." (ECF 1, Compl. ¶ 71.) Further, Plaintiff alleges Defendant Paterson was negligent as a result of its failure to "properly screen, hire, employ and supervise, employees such as Defendant Moravek." (*Id.* ¶ 73.)  Despite these broad conclusory allegations against the Moving Defendants, Plaintiff fails to allege any facts attributing to the supposed negligent conduct, and as such, merely offers "labels and conclusions" counter to what is required by *Twombly* and *Iqbal*.

As a result, Count VIII of Plaintiff's Complaint is dismissed in its entirety without prejudice. [5]

### IV.    Conclusion

For the reasons stated above, the Defendant's motion to dismiss Plaintiff's Complaint (ECF 9), is **GRANTED.** Plaintiff's Complaint is dismissed without prejudice. An appropriate Order accompanies this opinion.  Plaintiff may file an amended pleading that is consistent with this Opinion, within thirty (30) days of the date of the Opinion and the accompanying Order.

---

[5] Plaintiff's Complaint asserts general claims of negligence pursuant to state law but does not explicitly assert claims under the New Jersey Tort Claims Act ("TCA"). However, Plaintiff's brief in opposition specifically references the TCA. A district court may not consider issues raised for the first time in a brief. *Perry v. Comm'r*, 136 F.App'x 461, 462 (3d Cir. 2005). If Plaintiff wishes to amend his Complaint to assert these allegations under the TCA and establish compliance with the TCA pleading and notice requirements, he may do so.

Dated: March 27, 2024

/s/ Jamel K. Semper
**HON. JAMEL K. SEMPER**
**United States District Judge**