<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KHALIF COOPER,<br><br>    *Plaintiff*,<br><br>v.<br><br>CITY OF PATERSON; OFFICER JERRY MORAVEK; POLICE CHIEF IBRAHIM BAYCORA; POLICE DIRECTOR JERRY SPEZIALE; JANE/JOHN DOES 1-10, fictitious persons; ABC CO., fictitious persons,<br><br>    *Defendants*. | Civil Action No. 23-03566<br><br><u>**OPINION**</u><br><br>October 21, 2024 |

**SEMPER**, District Judge.

The current matter comes before the Court on a motion to dismiss filed by the City of Paterson ("Paterson" or "Defendant"). (ECF 40.) Plaintiff Khalif Cooper ("Plaintiff") opposed the motion. (ECF 41.) Paterson filed a brief in reply.[1] (ECF 17.) The Court reviewed all submissions made in support of and in opposition to the motion and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons stated below, Defendant's motion is **DENIED**.

---

[1] Defendant's brief in support of its motion to dismiss (ECF 40-2) will be referred to as "Def. MTD." Plaintiff's brief in opposition to the Defendant's motion (ECF 41) will be referred to as "Pl. Br." and the Defendant's reply brief (ECF 42) will be referred to as "Def. Rep."

I.     **FACTUAL AND PROCEDURAL BACKGROUND**[2]

When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). Plaintiff brings this action in his individual capacity and at all relevant times, was a resident of the State of New Jersey, City of Paterson. (ECF 39, FAC ¶ 7.) Defendants Ibrahim Baycora ("Baycora") and Jerry Speziale ("Speziale") were employed by Defendant City of Paterson ("Paterson")[3] as the Police Chief and Police Director, respectively, during the relevant timeframe. (*Id*. ¶¶ 8-11.) Plaintiff sues the Officer Defendants in both their individual and official capacities. (*Id*.)

On or about June 11, 2022, Plaintiff alleges that Moravek and other members of the Paterson Police Department ("PPD") were responding to a noise complaint on Garrison Street in Paterson. (*Id*. ¶ 13.) Upon hearing gunshots, Moravek ran toward the sound of the gunshots on to Marion Street. (*Id*. ¶ 14.) At this time, Plaintiff contends he was running away from the gunshots and crossed the path of Moravek, at which time, Moravek started pursuing Plaintiff. (*Id*. ¶ 15.) During the pursuit, Moravek yelled at the Plaintiff to "drop the gun" and shortly thereafter, fired two shots at Plaintiff, striking him once in his back, causing Plaintiff to fall to the ground. (*Id*. ¶¶ 17-20.) Moravek did not find a weapon on Plaintiff or within Plaintiff's reach. (*Id.*) As a result of the shooting, Plaintiff sustained damage to his spinal cord, leaving him unable to walk. On February 6, 2023, the State brought criminal charges against Moravek alleging second-degree aggravated assault causing serious bodily injury in violation of N.J. Stat. Ann. § 2C:12-1B(1) and second degree official misconduct in violation of N.J. Stat. Ann. § 2C:30-2A. (*Id.* ¶ 22.) Following

---

[2] The facts are taken from the First Amended Complaint ("FAC") (ECF 39) for purposes of the current motion.
[3] Defendants Baycora, Speziale, and Paterson will be referred to collectively as the "Non-Moving Defendants" for purposes of this motion to dismiss.

an investigation of the incident by the New Jersey Attorney General Public Integrity and Accountability office, on or around March 27, 2023, the New Jersey Attorney General assumed control over the Paterson Police Department. (*Id.* ¶¶ 24, 27.)

On July 2, 2023, Plaintiff filed an initial complaint in this Court alleging that Defendants and others violated his constitutional rights, seeking redress for the deprivation of Plaintiff's civil liberties and compensatory and punitive damages in the amount of $50,000,000.00 to redress the alleged deprivation of Plaintiff's rights secured by the Constitution of the United States and State of New Jersey. (*See generally* ECF 1, Compl.) Defendants Baycora, Speziale, and City of Paterson filed their first motion to dismiss on September 8, 2023. The Court reviewed all the submissions in support and in opposition and held oral argument with the parties on March 26, 2024. On March 27, 2024, this Court granted in part and denied in part Defendant's motion, finding that the Plaintiff properly pled a municipal claim under Monell showing the existence of a custom of unlawful conduct but requiring the Plaintiff to specifically plead claims for failure to train and supervise; dismissing the claims with prejudice against Defendants Ibrahim Baycora and Jerry Speziale; and dismissing without prejudice the claims of negligence against Defendant City of Paterson. (ECF 35, March Opinion at 5-14.)

On April 25, 2024, Plaintiff filed his First Amended Complaint. On May 8, 2024, Defendant City of Paterson filed a Motion to Dismiss Counts Five (Monell) and Seven (Negligence) of the FAC. (ECF 40).

## II. MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### III.   LEGAL ANALYSIS

A municipality or municipal agency may be held liable under Section 1983 only if its official policy or custom causes a constitutional injury. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 658 (1978)) ("When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom.").

4

The NJCRA was modeled after Section 1983, and, thus, courts in New Jersey have consistently looked at claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. June 29, 2011); *Chapman v. New Jersey*, No. 08–4130, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart[.]"); *Armstrong v. Sherman,* No. 09–716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983[.]").

Finally, under New Jersey law, to succeed on a negligence claim, a plaintiff must establish: "(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages." *Bullock v. Ancora Psychiatric Hosp.*, No. 10-1412, 2011 U.S. Dist. LEXIS 92307, at *35-36 (D.N.J. Aug. 18, 2011) (alterations in original) (citing *Polzo v. Cnty. of Essex*, 960 A.2d 375, 384 (N.J. 2008)).

1. ***Monell* Liability (Count V)**

Turning to the claims alleging municipal liability, in *Monell*, the Supreme Court established that municipalities and other government entities were "persons" subject to liability under 42 U.S.C. § 1983 for constitutional rights violations, but they were not liable under the doctrine of *respondeat superior* for the misconduct of their employees. *Monell*, 436 U.S. at 690-92; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 810 (1985). To prevail on a *Monell* claim, a plaintiff must first establish that the municipality had a policy or custom that deprived him of his constitutional rights. *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) (quoting *Beck* 89 F.3d at 971). In other words, the plaintiff must show that the municipality, through one of its policymakers, affirmatively proclaimed the policy or acquiesced in the

5

widespread custom that caused the violation. *Watson v. Abington Twp.*, 478 F.3d 144, 155-56 (3d Cir. 2007).

Additionally, "in the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (citation omitted). However, a failure to train claim can only serve as the basis for a Section 1983 liability when "the failure to train amounts to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *Id.* (citation omitted). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* (citation omitted). Deliberate indifference may be demonstrated by showing a pattern of violations that put the municipal employee on notice that a new program is necessary or a single incident violation where the need for training was patently obvious. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014).

Specifically, a plaintiff sufficiently pleads deliberate indifference by showing that "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne Cnty*, 660 F.3d 169, 180 (3d Cir. 2011) (internal quotation marks omitted) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).

### a. Failure to Train

A *Monell* claim may be premised on a municipality's failure to train, supervise, and discipline. To plead such a failure-to-train claim, a plaintiff must demonstrate that a city's failure

6

"reflects a deliberate or conscious choice." *Roman*, 914 F.3d at 798-800 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). Establishing a failure to train claim under Section 1983 is difficult and applies in narrow situations. *Reitz,* 125 F.3d at 145; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989) (concluding there are "limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983"). "A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz*, 125 F.3d at 145 (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991)). A "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bryan*, 520 U.S. at 404. It is not enough for a Section 1983 Plaintiff to merely identify conduct "properly attributable to the municipality." *Id.* Rather, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

The reasoning of *Roman* is particularly instructive and allows this Court to conclude that Cooper's failure-to-train claims may proceed at this time. Upon review of Plaintiff's initial Complaint, this Court concluded Plaintiff had not adequately pled a failure-to-train claim. However, in the FAC, Plaintiff references the PERF audit at length and specifically avers that "as to the training of PPD officers, the [PERF] audit found that officers were not receiving Integrating Communications, Assessment, and Tactics (ICAT) training as required in 2021 by the Attorney General for all law enforcement agencies." (FAC ¶ 57.) Cooper tethers the importance of this training to the injury sustained by stating "[a]s applied to PPD officers such as Defendant Moravek,

7

'[a] key part of this training is teaching officers to use a Critical Decision-Making Model (CDM), which is a tool for expanding the range of options that police officers consider as they respond to any situation, including situations that may involve a use of force.'" (*Id*.) Plaintiff also alleges the PERF recommended tactics training and the review of use of force reports. (FAC ¶¶ 57-59.) Indeed, a reasonable inference can be drawn that the existence of the PERF audit shows PPD was aware of the officers' lack of training. While Defendant contends the PERF report is not a showing a deliberate indifference, but rather reflects improvement, the question is not whether this evidence can be viewed as supporting the Defendant, but rather, when viewing all the documents in a light most favorable to the Plaintiff, the claim is plausible enough to withstand a motion to dismiss. *Roman*, 914 F.3d at 802. Cooper bolsters his position by underscoring the fact that the PERF audit itself was the result of numerous occurrences of unreasonable use of force by the PPD.[4] (ECF 41, Pl. Opp. at 7-8.) In support of this fact, Plaintiff also pled numerous occurrences of alleged unreasonable use of force involving the Paterson Police Department (FAC ¶ 53.)

Paterson's motion to dismiss Cooper's failure-to-train claim will be denied. Here, Cooper, in addition to the factual allegations detailed above, specifically avers a pattern of departmental disfunction through his reliance on the PERF audit performed in 2020. *Thomas*, 749 F.3d at 223 ("Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train."). When viewed in a light most favorable to plaintiff, a reasonable inference can be drawn between the lack of alternatives to use of force training and Plaintiff's injuries.

Therefore, Defendant's motion to dismiss Count V of the FAC is **DENIED**.

2. **Negligence Claim (Count VII)**

---

[4] Indeed, the PERF audit was performed in 2020 to perform an assessment of the PPD to identify inadequacies in PPD's use of force policy, training, and supervision of Paterson Police Department Officers. (FAC ¶ 53.)

8

In Count VII, Plaintiff contends that Paterson was negligent for failing to train and/or supervise, and as a result, proximately caused Plaintiff's damages. Under New Jersey law, in order to sustain a common law cause of action in negligence, a plaintiff must show four core elements: "(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages." *Weinberg v. Dinger*, 524 A.2d 366, 373 (N.J. 1987) (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts,* § 30 at 164-65 (5th ed. 1984)).

Further, to establish a negligent training or supervision claim, a Plaintiff must present evidence demonstrating:

> (1) that the employer "knew or had reason to know of particular unfitness, incompetence[,] or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons" and (2) "that, through the negligence of the employer in [training or supervising] the employee, the latter's incompetence, unfitness[,] or dangerous characteristics proximately caused the injury."

*G.A.-H. v. K.G.G.*, 210 A.3d 907, 916 (N.J. 2019) (quoting *Di Cosala v. Kay*, 450 A.2d 508, 516 (N.J. 1982)).

In the FAC, Plaintiff alleges that Officer Moravek had a duty to exercise reasonable care in using force and that he breached that duty by using such excessive force on an unarmed plaintiff who posed no immediate threat. (FAC ¶¶ 74-88.) The FAC specified Officer Moravek knew or should have known the proper standards for using force in accordance with the Attorney General Guidelines and the training he received on the use of deadly force in 2020 and 2021. (*Id.*) Further, Plaintiff alleges Defendant Paterson was negligent as a result of its failure to "properly screen, hire, employ and supervise, employees such as Defendant Moravek." (*Id.*) Specifically, Plaintiff contends that the City of Paterson was aware of Moravek's twelve previous issues with the use of force yet failed to review these reports and implement training based on the PERF audit. (*Id.*) This

fact, Plaintiff claims, created an unreasonable risk that served as the proximate cause of Plaintiff's injuries. (*Id.*)

Plaintiff thus alleged sufficient facts that went beyond conclusory statements as required by *Twombly* and *Iqbal* since the allegations sufficiently plead a breach of duty and attribute Plaintiff's injuries to that breach. Furthermore, despite Defendant's assertions, Courts have consistently rejected arguments that the NJTCA bars liability for negligent supervision in the face of an employee's willful conduct. *See V.A. v. N.J. Nat'l Guard Youth Challenge Program*, No. 06-347, 2007 WL 2010940, at *3 (D.N.J. July 9, 2007) (collecting cases). Indeed, Paterson may be liable for alleged negligent training or supervision claims even though it is immune from vicarious liability under *respondeat superior*. *Id.* at 12, 105 S.Ct. 1694.

Based on the foregoing, Defendant's motion to dismiss Count VII of Plaintiff's FAC is **DENIED**.

### IV.  CONCLUSION

For the reasons stated above, the Defendant's motion to dismiss Plaintiff's First Amended Complaint is **DENIED**.

/s/ Jamel K. Semper
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Stacey D. Adams, U.S.M.J.
Parties